**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ZORANA ALEKSIC and STEVEN SCHALLER, on behalf of themselves and the class members described herein, | ) ) ) ) |
| Plaintiffs, | ) No. 13 C 7802 ) ) |
| v. | ) Judge Ronald A. Guzmán ) |
| EXPERIAN INFORMATION SOLUTIONS, INC. and CLARITY SERVICES, INC., | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs sue defendants for their alleged violations of the Fair Credit Reporting Act ("FCRA"). Defendants have filed Federal Rule of Civil Procedure ("Rule") 12(b)(6) motions to dismiss the amended complaint. For the reasons set forth below, the motions are granted.

**Facts**

Experian is a credit reporting agency, and Clarity is a company that obtains consumer credit reports for third parties. (Am. Compl. ¶¶ 6-7, 51.) In October 2012, Clarity obtained Aleksic's credit report from Experian and gave it to Mambo Cash, Great Plains Lending, Red Rock Tribal Lending, LLC, Payday Max Ltd., and Cashweb USA, which are high interest Internet lenders, and Lead Express and CIAW T3 Leads Night, which are lead generators or brokers for such lenders. (Am. Compl. ¶¶ 8, 20-25.) Aleksic did not have a business relationship with any of these lenders and did not authorize them to obtain, or defendants to provide them with, her credit report. (*Id.* ¶¶ 10-11.)

In January 2013, Clarity obtained Schaller's credit report from Experian and gave it to Red Rock Tribal Lending, LLC, Vivus Servicing, Ltd., Mambo Cash, Green Trust Cash, LLC, Star Group, LLC, RP Capital, LLC, and Blue Novis, Inc., which are high interest Internet lenders. (*Id.* ¶¶ 13, 20-21, 26-30.) Schaller did not have a business relationship with any of these Internet lenders and did not authorize them to obtain, or defendants to provide them, with his credit report. (*Id.* ¶¶ 16-17.)

Sometime after Clarity obtained plaintiffs' reports from Experian and gave them to the Internet lenders, plaintiffs received harassing collection calls and letters from unidentified payday lenders, though neither plaintiff had sought or obtained a payday loan. (*Id.* ¶¶ 9-10, 14-16.) Plaintiffs allege, on information and belief, that the payday lenders obtained their personal information "based on [defendants'] release of [their] credit report[s]" to the Internet lenders. (*Id.* ¶¶ 12, 19.)

## Discussion

The FCRA prohibits consumer credit reporting agencies like Experian from giving a consumer credit report to any person unless the agency has reason to believe that the person intends to use it to extend credit to the consumer or review or collect the consumer's account. 15 U.S.C. § 1681b(a)(3)(A); *see* § 1681e(a) (prohibiting agencies from "furnish[ing] a consumer report to any person if [the agency] has reasonable grounds for believing that the . . . report will not be used for a [permitted] purpose"). Moreover, it requires agencies "to maintain reasonable procedures" to properly limit the disclosure of reports, including requiring prospective users to identify themselves and certify that a report is sought only for statutorily-permitted purposes, and to make "reasonable

2

efforts" to verify prospective users' identities and certified uses before giving them a report. 15 U.S.C. § 1681e(a).

The FCRA requires resellers of consumer reports, like Clarity, to identify the end user of the report and the permissible purpose to which the end user will put the report to the agency from which it obtains a credit report. 15 U.S.C. § 1681e(e)(1)(A), (B). Resellers must also "establish . . . reasonable procedures designed to ensure that the report . . . is resold . . . only for a [permissible] purpose[,]" by: (1) requiring other resellers to whom they sell reports to identify the end users of the resold report, to certify the purposes for which the resold report will be used and to certify that it will be used for none other; and (2) making "reasonable efforts to verify the identifications and certifications." 15 U.S.C. § 1681e(e)(2)(A), (B).

Plaintiffs do not allege that defendants failed to obtain the statutorily-required certifications from the Internet lenders, that the Internet lenders were not real businesses or that they were not actually in the business of lending. In fact, plaintiffs acknowledge that the Internet lenders are actually lenders, were identified as the end users of the information, and cited extensions of credit as the permissible purpose for which they sought plaintiffs' credit reports. (Am. Compl. ¶¶ 38, 20-24, 26-31; Pls.' Mem. Opp'n Mot. Dismiss at 4.) Plaintiffs argue, however, that defendants were also required to determine whether the Internet lenders were licensed to do business in Illinois.

The FCRA does not define the phrases "reasonable efforts" or "reasonable procedures," but the FTC interprets them to require an agency "to verify that [each user] is . . . a legitimate business having a 'permissible purpose' for the information reported." Commentary on the Fair Credit Reporting Act, § 607(b)(2)(A), 55 Fed. Reg. 18,804-01 at 18,819 (May 4, 1990). An agency is required to take additional steps, "such as requiring a separate, advance certification for each report

3

it furnishes [a] user, or auditing [a] user to verify that it is obtaining reports only for permissible purposes" only if "doubt arises concerning a[] user's compliance with its . . . certification." *Id.*, § 607(b)(2)(D). The courts have interpreted § 1681e similarly. *Harris v. Database Mgmt. & Mktg., Inc.*, 609 F. Supp. 2d 509, 515-17 (D. Md. 2009) (holding that a reseller complied with the FCRA because it obtained a certification from the end user, verified that the end user's "primary business purpose involv[ed] the accessing of consumer credit reports for a permissible purpose," and had no information that would call end user's representations into question); *Kausch v. Wilmore*, No. SACV 07-817 AG (MLGx), 2009 WL 481346, at *3 (C.D. Cal. Feb. 24, 2009) (finding a triable issue of fact as to whether agency complied with § 1681e given that it gave a consumer report to a private investigator without making "any effort to determine who the end user [of the credit report] . . . would be" or to verify that the report was requested for a permissible purpose); *Hernandez v. Lamboy Furniture, Inc.*, No. 07-00240, 2008 WL 4061344, at *9 (E.D. Pa. Sept. 8, 2008) (holding that agency fulfilled its duties under the FCRA by "conducting a tax record check to verify that [the lessor who requested the credit report] owned the [relevant] properties"); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 337 (N.D. Ill. 2002) (stating that the plain language of § 1681e suggests that "some investigation is . . . required"). Because plaintiffs do not offer any authority in support of their expansive interpretation of "reasonable," and their interpretation conflicts with that of the courts and the FTC, this Court rejects it.

Alternatively, plaintiffs allege that defendants should have suspected that the Internet lenders would violate their certifications, and thus conducted a more thorough inquiry into their businesses, because: (1) Experian knew it had given information to an online identify theft service based overseas, which had posed as a U.S.-based private investigator; and (2) Clarity knew that a Florida

4

branch of the Better Business Bureau had received a "pattern of complaints from consumers" alleging that Clarity had improperly given "pay day loan companies" access to their credit reports. (*See* Am. Compl. ¶¶ 40-41; *id.*, Ex. A, BBB Alert; *id.*, Ex. B, *Experian Sold Consumer Data to ID Theft Service*, KREBS ON SECURITY.COM, http://www.krebsonsecurity.com (Oct. 20, 2013).) These allegations suggest that defendants knew some entities improperly obtained information from defendants or improperly used information defendants provided them. They do not, however, support the inference that defendants knew or should have suspected that the Internet lenders were among them.

## Conclusion

For the reasons set forth above, the Court grants defendants' motions to dismiss [56 & 62]. Plaintiffs have fourteen days from the date of this Order to amend their complaint to state viable claims, if they can do so and comply with Rule 11. If plaintiffs fail to file an amendment, the Court will dismiss this case.

**SO ORDERED.**  **ENTERED: March 31, 2014**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**